**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION**

| | |
|---|---|
| THE ESTATE OF WILLIAM ZACKARY HARVEY, SHIRLEY FRANCIS, as Mother of William Zackary Harvey, and Michael Harvey, as surviving son of Williams Zackary Harvey, <br><br>     Plaintiff, <br><br> vs. <br><br> Former POLICE CHIEF ROY W. MINTER, in his individual capacity, et al., <br><br>     Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) )  Civil Action No.: 4:23-cv-00064-RSB-CLR |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO STRIKE PLAINTIFFS' SECOND AMENDED COMPLAINT, OR ALTERNATIVELY, TO DISMISS PLAINTIFFS' CLAIMS UNDER 42 U.S.C § 1983**

NOW COMES Defendants Roy W. Minter, Jr., The Mayor and Aldermen of the City of Savannah (incorrectly named herein as "City of Savannah, Georgia") ("City of Savannah"), Silver Leuschner, Michael Kerr and Matthew White (collectively, "Defendants") and files this memorandum in support of their motion to strike Plaintiffs' Second Amendment to Complaint ("Second Amended Complaint"), or alternatively, to dismiss Plaintiffs' claims under 42 U.S.C. § 1983.

**I.   INTRODUCTION**

This case arises out of William Zackary Harvey's ("Harvey") suicide that occurred while in the custody of the Savannah Police Department ("SPD"). Harvey's mother, Shirley Francis, and his son, Michael Harvey (collectively, "Plaintiffs"), have alleged that Defendants failed to protect

1

Harvey from inflicting self-harm, which resulted in a violation of his Fourteenth Amendment rights, the Americans with Disabilities Act (the "ADA") and the Rehabilitation Act of 1973 (the "Rehab Act"). In their original Complaint (Doc. 1), Plaintiffs asserted the following claims:

(i) a state law negligence claim against Defendants Leuschner and White (*Id.* at Count I);

(ii) a "deliberate indifference" claim against Defendants Leuschner and White under 42 U.S.C. § 1983 (*Id.* at Count II);

(iii) a supervisory liability claim against Defendants Minter, Leuschner and Kerr under 42 U.S.C. § 1983 (*Id.* at Count III);

(iv) a *Monell*[1] liability claim against Defendants Minter, Leuschner and Kerr under 42 U.S.C. § 1983 (*Id.* at Count III);

(v) a claim against the City of Savannah for failing to make reasonable modifications to its policies, practices and procedures in violation of Title II of the ADA (*Id.* at Count IV);

(vi) a claim against the City of Savannah for failing to provide reasonable accommodations to Harvey in violation of Title II of the ADA (*Id.* at Count V);

(vii) a claim against the City of Savannah for violating Section 504 of the Rehab Act (*Id.* at Count VI);

(viii) a punitive damages claim against all Defendants (*Id.* at Count VII); and

(ix) a claim for recovery of attorney's fees and costs against all Defendants pursuant to 42 U.S.C. § 1988(b), 42 U.S.C. § 12205 and 29 U.S.C. § 764a (*Id.* at Count VIII).

Defendants filed a Motion to Dismiss (Doc. 19) seeking dismissal of Counts II, III and IV in their entirety and dismissal of Count VII as to the City of Savannah. In response, Plaintiffs filed their First Amended Complaint (Doc. 26) asserting roughly fifty (50) additional allegations against Defendants, adding a claim for deliberate indifference against Minter and Kerr (Count II), and

---

[1] *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658 (1978).

removing its claim for punitive damages against the City of Savannah. Defendants again filed a Motion to Dismiss (Doc. 33) seeking dismissal of Counts II and III of the First Amended Complaint. Thereafter, the Court entered an Order (Doc. 45) allowing the parties to conduct limited discovery until December 5, 2023, as outlined in their Agreement for Limited Discovery. Per the Court's Order, Plaintiffs were given until December 19, 2023, to respond to Defendants' Motion to Dismiss.

Instead of responding to the pending Motion to Dismiss, Plaintiffs' filed their Second Amended Complaint[2] without leave of court on December 19, 2023. As will be discussed below, Plaintiffs' Second Amended Complaint should be stricken because they failed to seek leave of court as required by Rule 15(a)(2) and amendment would be futile. Alternatively, the Court should simply dismiss with prejudice Plaintiffs' claims under 42 U.S.C. § 1983 as to all Defendants, whether brought under the First Amended Complaint or Second Amended Complaint, because both pleadings fail to state a viable claim for relief.

**II.    RELEVANT ALLEGATIONS & FACTS**

   *i.    The Underlying Altercation*

On April 2, 2021, Harvey was involved in an altercation with another individual at the Pump-N-Go convenience store located at 2016 Skidaway Road, Savannah, Georgia. (Doc. 26, ¶ 21-22). Defendants White and Leuschner, along with other SPD officers, were dispatched to the crime scene in connection with the incident. (*Id.* at ¶ 21). At the time of the incident, Leuschner was employed as a detective by SPD and Officer White was employed as an officer by SPD. (*Id.*

---

[2] Plaintiffs' Second Amended Complaint is somewhat confusing at it simply amends Counts II and III of the First Amended Complaint without incorporating by reference any of the other allegations or counts contained in the First Amended Complaint. Also, Rodheem Greene is listed as *pro se* party on the Certificate of Service but has never been named as a defendant in this case.

3

at ¶¶ 17, 19). Ultimately, Harvey was arrested by another SPD officer, Rodheem Greene ("Greene"), who transported him to SPD's headquarters for questioning by Leuschner. (*Id.* at ¶ 24-28).

Upon arrival at headquarters, Officer Greene and Leuschner escorted Harvey to the interview room located on the third floor. (*Id.* at ¶ 32). While walking with Harvey, Leuschner activated her body worn camera, which remained active during the entirety of her interview with Harvey. (*Id.*; Doc. 32, Ex. A, Body Camera Footage). Leuschner did not activate the video surveillance system in the interview room because she was already utilizing her body worn camera. (*Id.* at ¶ 36).

>   ii.   *The Interview*

Defendants have provided the Court with video footage of the entirety of Leuschner's interview with Harvey as part of its most recently filed Answer, which Defendants believe speaks for itself. (Doc. 32, Ex. A). Accordingly, out of respect for the Court's time, Defendants will only provide a brief summary of the general timeline of the interview process. Harvey was detained in the interview room by Officer Greene immediately upon arrival at SPD Headquarters. (Doc. 26 at ¶ 58; Doc. 32, Ex. A at 01:12). During the interview, Leuschner left the interview room twice – once to quickly obtain paperwork needed to conduct the interview and a second time to interview the stabbing victim. (Doc. 26 at ¶ 62, 68; Doc. 32, Ex. A at 07:14). The first time Leuschner left the room her body camera remained active, and she did not speak with any other SPD employees. (Doc. 32, Ex. A at 07:40 – 08:36). After leaving the room for the second time, Leuschner closed the door, turned her body camera off, and told the two patrol officers, Officer White and Officer Greene, sitting outside of the room to watch Harvey. (Doc. 26, ¶ 70; Doc. 32, Ex. A at 39:34).

In the Second Amended Complaint, Plaintiffs have removed the prior allegations that misquoted Harvey's statements during his interview with Leuschner. Of particular importance, Plaintiffs no longer allege that Harvey stated to Leuschner that: "I'm not a violent person but I'll stand on myself and kill myself." (Doc. 1, ¶ 44). Presumably, Plaintiffs removed this allegation after reviewing the body cam footage provided by Defendants and realizing that Harvey actually stated that he would "stand on myself and **defend** myself." (Doc. 32, Ex. A at 08:50). Plaintiffs also no longer allege that Harvey "forcefully" banged his head on the table in the interview room. (Doc. 1, ¶ 54). Again, Plaintiffs presumably removed this allegation after reviewing the body cam footage, which clearly shows that Harvey made no attempt to forcefully bang his head on the table or inflict any other type of self-harm during the interview. (Doc. 32, Ex. A).

Plaintiffs allege that Leuschner had knowledge that Harvey: (a) was mumbling and getting emotional; (b) was crying; (c) stated that he would "rather die" than go to jail; (d) stated "I'm not going back to jail, you all will have to kill me"; (e) became very upset; (f) banged his head on the table; (g) suffered from a number of mental disorders; (h) yelled unintelligibly; (i) said all the crazy things people say when they are upset; and (j) consumed Zoloft and alcohol. (Doc. 52, ¶ 23-24). According to Plaintiffs, Leuschner never communicated any of these items to White or Kerr prior to leaving police headquarters. (*Id.* at ¶¶ 92-94, 181).

### iii. The Suicide Incident

After leaving the interview room a second time, Leuschner told Officer White and Officer Greene to watch Harvey. (Doc. 26, ¶ 70). According to these officers, they entered the interview room to check on Harvey within 20-40 minutes after Leuschner left. (*Id.* at ¶ 86). When the patrol officers opened the door, they observed Harvey hanging from a shoestring tied around a whiteboard in the interview room. (*Id.* at 88-94). Because Harvey was unconscious and without a

5

pulse, Officer White attempted to resuscitate him by performing CPR. (Doc. 26, ¶¶ 94, 98). Both Officer White and EMS were unsuccessful in reviving Harvey, and it was determined that he died as a result of the hanging. (*Id.* at ¶ 113).

    *iv.    SPD Policy Violations*

Plaintiffs have alleged that Defendants Leuschner, White and Kerr violated certain SPD policies that constituted the proximate cause of Harvey's death, including:

- SPD General Order #OPS-001, which requires a second investigator to monitor interviews through SPD's video surveillance system and requires suspects to be under direct supervision and never left along while in the interview room;

- SPD General Order #OPS-010, which requires the interviewing detective or officer to ensure that SPD's video surveillance system is working properly prior to the interview; and

- SPD General Order ADM-004, which requires officers to provide crisis intervention service in a safe and timely manner to persons who may be in an altered mental state.

(Doc. 26, ¶¶ 252-264; Doc. 52, ¶¶ 97-104).

    **III.    LEGAL ARGUMENTS AND CITATIONS TO AUTHORITY**

        **A.    <u>Plaintiffs Failed to Obtain Leave of Court to File Their Second Amended Complaint</u>**

The amendment of pleadings is governed by Rule 15 of the Federal Rules of Civil Procedure. This Rule permits a voluntary amendment of a complaint only within 21 days after service of a responsive pleading or a motion under one of the enumerated subsections of Rule 12. F.R.C.P. § 15(a)(1)(B). "In all other cases," amendment requires either opposing parties' written consent or the court's leave. F.R.C.P. § 15(a)(2). Because twenty-one (21) days have passed since the filing of Defendants' Motion to Dismiss (Doc. 33), Plaintiffs were required to obtain

Defendants' consent or obtain leave of court before filing their Second Amended Complaint. Plaintiffs did neither, and thus the Second Amended Complaint should be stricken from the record. As will be explained below, even if Plaintiffs had sought leave to amend, the Second Amended Complaint is nonetheless futile as it still fails to state a claim against any of the Defendants under 42 U.S.C. § 1983. *Dixon v. Green Tree Servicing, LLC*, No. 20-11317, 859 Fed. Appx. 373, 2021 U.S. Dist. LEXIS 124616 at *2 (11th Cir. May 28, 2021) ("An amendment is considered futile when the claim, as amended, would still be subject to dismissal.") (internal citation omitted).

### B. Standard of Review – Motion to Dismiss

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief," and must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court must accept the allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Ray v. Spirit Airlines, Inc.*, 836 F.3d 1340, 1347 (11th Cir. 2016). However, the court cannot accept as true threadbare recitations of the elements of the claim and must disregard legal conclusions unsupported by factual allegations. *Iqbal*, 556 U.S. at 678-79. A complaint must "be dismissed under Rule 12(b)(6) when its own allegations indicate the existence of an affirmative defense, so long as the defense clearly appears on the face of the complaint." *Quiller v. Barclays American/Credit, Inc.*, 727 F.2d 1067, 1069 (11th Cir. 1984).

### B. Plaintiffs' "Deliberate Indifference" Claims Against Leuschner, White and Kerr Should Be Dismissed Based Upon Qualified Immunity.

    *i.    Legal Standards*

7

The defense of qualified immunity offers complete protection for government officials sued in their individual capacities "insofar as their conduct does not violate clearly established . . . constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 817-18 (1982). "When properly applied, [qualified immunity] protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). To receive qualified immunity, the public official "must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (internal citation omitted). As law enforcement officers, there can be no dispute that Leuschner, White and Kerr were acting within their discretionary authority during their investigation of the underlying crime in this case, including the questioning of the primary suspect, Harvey. *See Hutton v. Strickland*, 919 F.2d 1531, 1537-38 (11th Cir. 1990); *see also Riebsame v. Prince*, 267 F. Supp. 2d 1225, 1236-1237 (M.D. Fla. 2003) (responding to a call for assistance, questioning witnesses, arresting suspects and escorting detainees are within the discretionary authority of a police officer).

The burden then shifts to Plaintiffs to show that Leuschner, White and Kerr are not entitled to qualified immunity. *Keating v. City of Miami*, 598 F.3d 753, 762 (11th Cir. 2010). To overcome qualified immunity at the motion to dismiss stage, the plaintiff must plead sufficient facts to allege that: (1) the defendant violated a constitutional right; and (2) the right was clearly established at the time of the alleged violation. *Morris v. Town of Lexington*, 748 F.3d 1316, 1322 (11th Cir. 2014). Because Plaintiffs have failed to allege a violation of Harvey's Fourteenth Amendment, Leuschner, White and Kerr are entitled to qualified immunity in this case.

To prevail under § 1983 for violation of substantive rights under the Fourteenth Amendment, the plaintiff must show that the defendant "(1) had subjective knowledge of a risk of serious harm; (2) disregarded that risk; and (3) acted with more than **gross** negligence." *Johnson v. Lewis*, 83 F. 4th 1319, 1327 (11th Cir. 2023) (emphasis added). For a defendant to have the requisite subjective knowledge, he "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and **he must also draw the inference**." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994) (emphasis added). There is also an objective component requiring a plaintiff to show "the defendant disregarded that known risk by failing to respond to it in a reasonable manner." *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1099 (11th Cir. 2014).

With respect to detainee suicide cases, a plaintiff must prove that the defendant deliberately disregarded "a **strong likelihood** rather than a mere possibility that the self-infliction of harm will occur." *Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cnty.*, 402 F.3d 1092, 1115 (11th Cir. 2005) (emphasis in original) (citation omitted). "The mere opportunity for suicide, without more, is clearly insufficient to impose liability on those charged with the care of prisoners." *Id.* An officer "cannot be liable under [section] 1983 for the suicide of a prisoner who never had threatened or attempted suicide and who had never been considered a suicide risk." *Id.* at 1116. Thus, to survive a motion to dismiss, it is Plaintiffs' burden to allege facts plausibly demonstrating a strong likelihood of suicide that was known by Defendants Leuschner, White and Kerr. The Eleventh Circuit has routinely held that this is a difficult burden to meet and one that certainly has not been met by Plaintiffs in this case. *Popham v. City of Talladega*, 908 F.2d 1561, 1463 (11th Cir. 1990) ("Absent knowledge of a detainee's suicidal tendencies . . . failure to prevent suicide has never been held to constitute deliberate indifference.").

9

*ii.     Defendant Leuschner*

Plaintiffs allege that Leuschner was aware of the strong likelihood that Harvey would commit suicide based upon her personal interaction with Harvey during the interview, which included knowledge that Harvey suffered from schizophrenia, bipolar disorder and depression and had consumed Zoloft and alcohol on the date of the incident. (Doc. 52, ¶ 22-24). Even when taken as true, these allegations are insufficient to support a claim for deliberate indifference for a number of reasons.

First of all, whether Harvey suffered from various mental conditions, was intoxicated or exhibited violent behavior is immaterial to this case and cannot adequately support Plaintiffs' claim. *See Holland v. City of Atmore*, 168 F. Supp. 2d 1303, 1313 (S.D. Ala. 2001) ("Courts, including the Eleventh Circuit, have rejected the notion that circumstances such as intoxication, sadness, anger, concern or violence reflect a strong likelihood of imminent suicide."); *see also Popham*, 908 F.3d at 1562-64; *Jacobs v. Ford*, No. 21-13411, 2022 U.S. App. LEXIS 10265 at *12 (11th Cir. Apr. 15, 2022). Instead, the Eleventh Circuit has made it clear that the baseline requirement for subjective knowledge in a suicide case is knowledge of a previous threat or attempt at suicide. *Edwards v. Gilbert*, 867 F.2d 1271, 1275 (11th Cir. 1989) ("In the absence of a previous threat of or an earlier attempt at suicide, we know of no federal court in the nation or any other court within this circuit that has concluded that official conduct in failing to prevent a suicide constitutes deliberate indifference."). Because there are no allegations that Leuschner had knowledge of a previous suicide threat or attempt, Plaintiffs' claim for deliberate indifference must fail.

Next, there are no factual allegations that Leuschner did in fact draw the conclusion from her interactions with Harvey that he was substantially likely to commit suicide. In fact, Plaintiffs

allege that Leuschner was not even capable of making such a conclusion because she never received proper training and "was not competent to evaluate Mr. Harvey's mental state." (Doc. 52 ¶ 25-30). Put another way, the crux of Plaintiffs' allegations in the Second Amended Complaint is that Leuschner "should have perceived the risk, but did not," which is insufficient to state a claim for deliberate indifference as to Harvey's suicide. *Farmer v. Brennan*, 511 U.S. 825, 826 (1994); *see also Campbell v. Sikes*, 169 F.3d 1353, 1370-71 (1999) (deliberate indifference requires the defendant to have actually been aware of the significant risk of serious harm and persisted in his behavior anyways).

Finally, the pleadings in this case, even if reasonably construed in Plaintiffs' favor, fail to demonstrate the existence of a "strong likelihood" that Harvey would commit suicide. A review of the body cam footage for the interview demonstrates that Harvey, although understandably upset, was generally cooperative with Leuschner and even indicated on multiple occasions that he was not a violent person. (Doc. 32, Ex. A at 05:20-05:32, 08:49-08:55, 21:35-21:40). The body cam footage shows that at no point during the interview did Harvey threaten to kill himself, nor did he engage in any act of self-harm during the entirety of the interview. Harvey simply does not make any genuine threats of self-harm or exhibit any concerning behavior during his interview that would lead anyone to believe that he was substantially likely to commit suicide.

  iii. *Defendant White*

Plaintiffs' deliberate indifference claim is subject to dismissal because the Second Amended Complaint alleges facts that affirmatively demonstrate that White could not, and did not, have subjective knowledge of a substantial likelihood that Harvey would commit suicide. In particular, Plaintiffs have alleged that Leuschner was already interviewing Harvey with the door closed when White arrived at SPD headquarters. (Doc. 52, ¶ 61). In addition, Plaintiffs allege that

11

Leuschner did not tell White anything about Harvey's behavior or what was said during the interview at any time prior to the incident. (Doc. 52, ¶ 92-95). Accordingly, based on Plaintiffs' own allegations, it would have been impossible for White to have the requisite knowledge regarding Harvey's potential for committing suicide. Therefore, Plaintiffs' deliberate indifference claim against White must be dismissed.

   *iv.* *Defendant Kerr*

In the Second Amended Complaint, Plaintiffs appear to also assert a claim for deliberate indifference as to Kerr. (Doc. 52, ¶ 17). However, this claim can easily be dismissed as the Second Amended Complaint is devoid of any allegations that Kerr had subjective knowledge of Harvey's alleged risk of committing suicide. More particularly, there are no allegations that Kerr had any personal interaction with Harvey or was provided any information regarding Harvey's alleged risk of self-harm. Instead, Plaintiffs appear to impute him with such knowledge based on his supervisory role. *Id.* at ¶ 20. However, such imputed knowledge cannot serve as a basis for demonstrating that Kerr had subjective knowledge of Harvey's alleged risk of suicide. *Burnette v. Taylor*, 533 F.3d 1325, 1331 (11th Cir. 2008) ("imputed or collective knowledge cannot serve as the basis for a claim of deliberate indifference. Each individual defendant must be judged separately and on the basis of what that person kn[ew]."). Because there are no allegations that Kerr was aware of Harvey's alleged risk of suicide, Plaintiffs' claim for deliberate indifference must be dismissed as to Kerr.

   *v.* *No Allegations of More Than Gross Negligence*

Plaintiffs' "deliberate indifference" claim is also due to be dismissed because the Second Amended Complaint still only alleges, at best, nothing more than ordinary negligence on behalf of any of the Defendants. The wrongful acts alleged by the Plaintiffs are all premised upon the

presumption that Leuschner, White and Kerr failed to follow various policies of the SPD that ultimately led to Harvey's death. (Doc. 52, ¶ 97). The Eleventh Circuit has made it clear that such allegations do not rise to the level of deliberate indifference. *Taylor v. Adams*, 221 F.3d 1254, 1259 (11th Cir. 2000) ("failure to follow procedures does not, by itself, rise to the level of deliberate indifference because doing so is at most a form of negligence"). Because there are no allegations in Plaintiff's Second Amended Complaint that Leuschner, White or Kerr acted in a manner that was more than gross negligence, they cannot be said to have exhibited deliberate indifference to Harvey's needs. *See Johnson*, 83 F.4th at 1327 (11th Cir. 2023). For these reasons, Plaintiffs have failed to state a claim under 42 U.S.C. § 1983 as to Leuschner, White and Kerr, and thus Count II of the Second Amended Complaint should be dismissed with prejudice pursuant to F.R.C.P. 12(b)(6).

### D. **Plaintiffs' Supervisory Liability Claims Against Minter, Leuschner and Kerr Should Be Dismissed Based on Qualified Immunity.**

*i.  Legal Standards*

In general, "supervisory officials are not [] liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999). Liability may be imposed, however, if a plaintiff can show that "the supervisor personally participate[d] in the alleged constitutional violation" or "there is a causal connection between the actions of the supervising official and the alleged constitutional deprivation." *Id.* To establish a causal connection, the plaintiff must show either: (1) a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged constitutional deprivation, and he fails to do so; (2) a supervisor's custom or policy results in deliberate indifference to constitutional rights; or (3) facts support an inference that the supervisor

13

directed the subordinates to act unlawfully[3] or knew that the subordinates would act unlawfully and failed to stop them from doing so. *Christmas v. Harris County*, 51 F.4th 1348, 1355 (11th Cir. 2022). Notably, "[t]he standard by which a supervisor is held liable in [his] individual capacity for the actions of a subordinate is extremely rigorous." *Id.* (quoting *Braddy v. Fla. Dep't of Labor & Emp't. Sec.*, 133 F.3d 797, 802 (11th Cir. 1998).

      ii.      *Defendant Minter and Kerr*

Apart from conclusory statements, there does not appear to be any allegations in the Second Amended Complaint that Defendants Minter or Kerr personally participated in Harvey's alleged constitutional deprivation. At best, Plaintiffs attempt to allege that Minter and Kerr "participated" because they were negligent in the training and supervision of those who were alleged to have participated – Leuschner, White and Greene. (*See* Doc. 52, ¶¶ 20, 183, 190-191, 236). It is well established that a supervisor cannot be liable under § 1983 for "mere negligence in the training or supervision of his employees." *Barr v. Gee*, 437 Fed. Appx. 865, 875 (11th Cir. 2011) (citing *Greason v. Kemp*, 891 F.2d 829, 836-37 (11th Cir. 1990)). Instead, as described above, Plaintiffs must allege a causal connection between their actions and the alleged constitutional deprivation, which Plaintiffs have failed to do.

The Second Amended Complaint does not allege any facts regarding a history of widespread abuse that would have put either Minter or Kerr on notice of a need to correct the alleged deprivation in this case. "The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences." *Hartley*, 193 F.3d at 1268. Here, Plaintiffs have only made conclusory

---

[3] Defendants do not address this element as there do not appear to be any allegations that Leuschner, Kerr or Minter directed subordinates to act in an unlawful manner.

allegations, based upon information and belief[4], that Minter, not Kerr, had knowledge of a history of failures by detectives and officers to adhere to certain SPD policies. (Doc. 26, ¶¶ 212-214; Doc. 52, ¶¶ 125, 209). In fact, there are no allegations at all regarding other detainee suicides that occurred prior to the incident at issue. The conclusory allegations offered by Plaintiffs have long been held as insufficient to impose supervisory liability based on a pattern of widespread abuse. *See Doe v. School Bd. Of Broward Cnty.*, 604 F.3d 1248, 1266 (11th Cir. 2010).

Plaintiffs have also not set forth any factual allegations supporting a claim for supervisory liability based upon a custom or policy implemented by Minter or Kerr. To show a policy or customs, a plaintiff must adequately allege the existence of "a persistent and wide-spread practice." *Depew v. City of St. Mary's, Ga.*, 787 F.2d 1496, 1499 (11th Cir. 1986). This necessarily requires allegation of multiple incidents or reports of prior misconduct by SPD officers. *Piazza v. Jefferson Cty.*, 923 F.3d 947, 957 (11th Cir. 2019); *see also Goebert v. Lee County*, 510 F.3d 1312, 1332 (11th Cir. 2007) (holding that plaintiff failed to meet the rigorous standard for supervisory liability when she failed to show that any other inmates had suffered the same alleged violation). Again, the Second Amended Complaint is devoid of any factual allegations of other incidents wherein a detainee committed self-harm due to an alleged custom or policy implemented by either Minter or Kerr. In fact, as will be explained more below, Plaintiffs have alleged the exact opposite – *i.e.,* SPD did have policies in police to prevent detainees from committing self-harm. (Doc. 52, ¶¶ 130-137).

---

[4] When allegations such as this are based solely "upon information and belief," courts need not accept them as true at the motion-to-dismiss stage. *See Smith v. City of Sumiton*, 578 Fed. Appx. 933, 936 n.4 (11th Cir. 2014) ("[F]or purposes of a Rule 12(b)(6) motion to dismiss, we do not have to take as true allegations based merely 'upon information and belief.'").

15

### iii. Defendant Leuschner

Plaintiffs' claim for supervisory liability against Leuschner stems solely from her direct participation in the alleged constitutional deprivation. However, as discussed above, Plaintiffs' have failed to state a claim for deliberate indifference as to any of the Defendants, and thus Plaintiffs' supervisory claim against Leuschner must also fail.

### iv. No Underlying Constitutional Violation

Plaintiffs' supervisory liability claims against Leuschner, Minter and Kerr should be dismissed for the separate reason that they have failed to allege an underlying constitutional violation. *Knight ex rel. Kerr v. Miami-Dade Cnty.*, 856 F.3d 795, 821 (11th Cir. 2017) ("There can be no policy-based liability or supervisory liability when there is no underlying constitutional violation."); *see also Gish v. Thomas*, 516 F.3d. 952, 955 (11th Cir. 2008). As explained above, Plaintiffs have failed to plead any underlying constitutional violation in this case. Accordingly, there can be no viable supervisory liability claim under 42 U.S.C. § 1983 and Count III of Plaintiffs' Second Amended Complaint as it relates to Minter, Leuschner and Kerr should be dismissed with prejudice pursuant to F.R.C.P. 12(b)(6).

### E. Plaintiffs' Claim for *Monell* Liability Should Be Dismissed.

As an initial matter it is unclear from the allegations of the Second Amended Complaint whether Plaintiffs' have asserted a claim for *Monell* liability against Chief Minter in his official capacity, the City of Savannah or both[5]. Regardless, there are no allegations within the Second

---

[5] Suing Chief Minter in his official capacity is an alternative way to assert a claim against the entity he represents, which in this case would be the Savannah Police Department, or more appropriately, the City of Savannah. Because the City of Savannah has been named as a defendant, the official capacity claim against Chief Minter is duplicative and should be dismissed. *See Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991) (affirming directed verdict in favor of officers in their

Amended Complaint that set forth a viable claim for *Monell* liability and the claim should be dismissed. Under *Monell*, a municipality may be liable in a § 1983 action "only where the municipality itself causes the constitutional violation at issue." *Cook v Sheriff of Monroe County*, 402 F.3d 1092, 1115 (11th Cir. 2005). Thus, a plaintiff must establish that an official policy or custom of the municipality was the "moving force" behind the alleged constitutional deprivation. *See Monell*, 436 U.S. at 693-94. The policy requirement is designed to "distinguish acts of the municipality from acts of employees of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." *Grech v. Clayton Cnty.*, 335 F.3d 1326, 1329 n.5 (11th Cir. 2003) (quotation omitted). Because a municipality will rarely have an officially adopted policy that permits a particular constitutional violation, most plaintiffs must demonstrate that the municipality has a custom or practice of permitting the violation. *See Id.* at 1330. The Eleventh Circuit has defined "custom" as "a practice that is so settled and permanent that it takes on the force of law" or a "persistent and wide-spread practice." *Sewell*, 117 F.3d at 489.

In this case, Plaintiffs have not alleged that any official policy violated Harvey's constitutional rights. In fact, they concede that the City of Savannah "has developed, over time, certain policies to comply with its constitutional obligations to provide safety and protection to detainees, including Mr. Harvey." (Doc. 52, ¶ 131). In a strained effort to bring a *Monell* claim, Plaintiffs appear to allege that it was a custom or practice within the City of Savannah for supervisors to improperly assume that subordinates were complying with the aforementioned policies and that such practice was the moving force behind Harvey's alleged constitutional

---

official capacities where the municipality was also a named defendant to avoid redundancy and confusing the jury).

17

violation. *Id.* at ¶ 241-247. Not only is this an absurd allegation, but it is not supported by any factual allegations demonstrating that such practice was so settled that it takes on the force of law or was a persistent and widespread practice. Apart from the conclusory allegations related to this matter, the Second Amended Complaint is devoid of any factual allegations of any prior incidents or the City's alleged knowledge and alleged failure to deter the conduct at issue in this case. *See Depew*, 787 F.2d at 1499 ("Normally random acts or isolated incidents are insufficient to establish a custom or policy."). Accordingly, Plaintiffs' have failed to allege *Monell* liability against the City and this claim should be dismissed.

### F. Plaintiffs' Claim for Punitive Damages and Expenses of Litigation Should be Dismissed as to Defendants Kerr and Minter.

In Counts VII and VIII of the Second Amended Complaint, Plaintiffs bring claims against Kerr and Minter for punitive damages and attorney's fees pursuant to 42 U.S.C. § 1988(b). These claims are derivative of the substantive claims made by Plaintiffs and cannot survive where all of the underlying claims brought against Kerr and Minter are dismissed. *See, e.g., Mann v. Taser Intern., Inc.*, 588 F.3d 1291, 1304 (11th Cir. 2009) ("A punitive damages claim is derivative of a plaintiff's tort claim, and where a court has dismissed a plaintiff's underlying tort claim, dismissal of a plaintiff's punitive damages claim is also required.") (citations omitted); *Lamb v. Salvage Disposal Co. of Ga.*, 244 Ga. App. 193, 196 (2000) (denying recovery of litigation expenses where plaintiff could not prove damages element of underlying claim and stating O.C.G.A § 13-6-11 "does not create an independent cause of action but merely permits in certain limited circumstances the recovery of the expenses of litigation incurred as an additional element of damages.") (citation omitted). For the reasons set forth herein, the Plaintiffs have failed to bring any viable claims against Kerr and Minter. Therefore, Count VII and VIII should be dismissed with prejudice as to Kerr and Minter.

### E.      CONCLUSION

Plaintiffs' Second Amended Complaint fails to set forth allegations sufficient to state a claim for relief under 42 U.S.C. § 1983 against any of the Defendants in this matter. Accordingly, Counts II and III of Plaintiffs' Second Amended Complaint should be dismissed with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6). Further, as to Defendants Kerr and Minter, Plaintiffs have failed to allege any claims for relief, and they should be dismissed from this action in their entirety.

Respectfully submitted this 16th day of January 2024.

**HUNTER, MACLEAN, EXLEY & DUNN, P.C.**

/s/Taylor L. Dove
Bradley M. Harmon
Georgia Bar No. 327097
Taylor L. Dove
Georgia Bar No. 993210
*Attorneys for Defendants*

200 East Saint Julian Street
Post Office Box 9848
Savannah, Georgia 31412-0048
Telephone:  912.236.0261
Facsimile:  912.236.4936
Email: BHarmon@HunterMaclean.com
Email: TDove@HunterMaclean.com

**OFFICE OF THE CITY ATTORNEY**

/s/ R. Bates Lovett
R. Bates Lovett
Georgia Bar No. 459568
Jennifer N. Herman
Georgia Bar No. 327017

P.O. Box 1027
Savannah, Georgia 31402
Telephone:  912.525.3092
Facsimile:  912.525.3267
Email: BLovett@savannahga.gov
Email: JHerman@savannahga.gov

19

## CERTIFICATE OF SERVICE

I hereby certify that I have this day served a copy of the within and foregoing **MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO STRIKE PLAINTIFFS' SECOND AMENDED COMPLAINT, OR ALTERNATIVELY, TO DISMISS PLAINTIFFS' CLAIMS UNDER 42 U.S.C § 1983** by using the CM/ECF system which will send a notice of electronic filing to all parties.

Respectfully submitted this 16th day of January 2024.

**HUNTER, MACLEAN, EXLEY & DUNN, P.C.**

*/s/Taylor L. Dove*
Taylor L. Dove
Georgia Bar No. 993210
*Attorneys for Defendants*

200 East Saint Julian Street
Post Office Box 9848
Savannah, Georgia 31412-0048
Telephone:  912.236.0261
Facsimile:  912.236.4936
Email: tdove@huntermaclean.com

4866-1015-5929 v1