IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | |
|---|---|
| THE ESTATE OF WILLIAM ZACKARY HARVEY; SHIRLEY FRANCIS, as Mother of William Zackary Harvey; and MICHAEL HARVEY, as surviving son of William Zackary Harvey,<br><br>Plaintiffs,<br><br>v.<br><br>The CITY OF SAVANNAH, GEORGIA, a Municipal Corporation of the State of Georgia; and SILVER LEUSCHNER, in his individual capacity,<br><br>Defendants. | CIVIL ACTION NO.: 4:23-cv-00064 |

**O R D E R**

This case arises from the April 2, 2021, suicide of William Zackary Harvey while he was in custody of the Savannah Police Department ("SPD"). (Doc. 79.) Harvey's mother, Shirley Francis, Harvey's son, Michael Harvey, and Harvey's estate sued the City of Savannah ("City") and SPD Detective Silver Leuschner, alleging various violations of federal and state law. (Id.) Presently before the Court is Defendants' Partial Motion to Dismiss, in which Defendants argue that Plaintiffs' Third Amended Complaint ("TAC") fails to state a claim for "deliberate indifference" under 42 U.S.C. § 1983 ("Section 1983") against Leuschner and likewise fails to state claims against the City under the Americans with Disabilities Act of 1990, 42 U.S.C. § 12112, et seq. ("ADA") and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("RA"). (Docs. 80, 80-1.) For the reasons below, the Court **GRANTS** Defendants' Motion. (Doc. 80.)

## BACKGROUND

**I.  Factual Background**

The following facts are set forth in the TAC. (Doc. 79.) On April 2, 2021, four SPD officers, Matthew White, Rodheem Greene, Timothy Valmont, and Silver Leuschner, were dispatched to a convenience store located at 2016 Skidaway Road, Savannah, Georgia, in connection with a reported altercation. (Id. at p. 4.) Following a brief on-scene investigation, the officers arrested a man who was allegedly in possession of a knife, and Greene escorted the man to the SPD Headquarters at Leuschner's direction. (Id. at p. 5.) The man was later identified as William Harvey. (Id. at p. 10.) Harvey was taken to an interview room for questioning. (Id. at p. 5.) During the interview, Leuschner did not turn on the camera in the interview room because her body-worn camera ("bodycam") was activated. (Id. at pp. 5–6.)

Harvey was handcuffed during the interview, and Leuschner described him as mumbling and emotional. (Id. at p. 6.) Harvey described himself as a paranoid schizophrenic with anxiety who was "really depressed." (Id.) Harvey also advised Leuschner that he takes Zoloft for his depression. (Id.) Leuschner responded, "Okay, but do any of those medical conditions keep you from talking to me[?]" (Id. at p. 25.) During the interview, Harvey was crying. (Id. at p. 6.) He stated that he would rather die than go to jail and that the police would have to kill him before he would go back to jail. (Id.) Leuschner observed Harvey bang his head on the table. (Id. at p. 7.)

Leuschner then left the interview room to go speak with her superior. (Id. at p. 8.) When she returned, Leuschner watched Greene handcuff Harvey's left hand to a wall anchor, leaving the other hand unshackled to sign a waiver of rights form. (Id.) Leuschner then exited the interview room for a second time and told Greene and another officer—who were outside the room—to watch Harvey. (Id.) Specifically, Leuschner told the officers, "[i]f you hear something, check on

him." (Id.) Leuschner never told the officers that they should open the door and either remain with Harvey inside the room or maintain direct, continuous visual observation of him. (Id. at p. 21.) Less than thirty minutes after Leuschner left, the officers entered the interview room to check on Harvey and, when they opened the door, found him tipped over, unconscious, with a shoestring tied around his neck. (Id. at pp. 9–10.) A subsequent autopsy report concluded that Harvey's cause of death was suicide by hanging. (Id. at p. 12.) The toxicology report found that Harvey's blood tested positive for alcohol, Zoloft, and byproducts of cocaine. (Id. at pp. 12–13.)

After Harvey's body was discovered, it was determined that neither the camera system nor the audio in the interview room had been turned on while Harvey was inside. (Id. at p. 10.) Following an investigation, Leuschner was terminated by a disciplinary review board for violating the following SPD policies: "a) criminal investigation policy; b) employee responsibility; c) oath of office ethics and conduct; and d) video/audio recording equipment." (Id. at p. 14.) Leuschner appealed her termination, but it was upheld. (Id.)

## II.    Procedural Background

Plaintiffs initially sued the City as well as Leuschner, White, and other officers in their individual capacities in this Court on March 14, 2023. (Doc. 1.) Defendants moved to dismiss, (doc. 19), and Plaintiffs filed their First Amended Complaint, (doc. 26). Defendants then filed a Partial Motion to Dismiss Plaintiffs' First Amended Complaint. (Doc. 33.) Rather than responding to the motion, Plaintiffs filed, without leave of the Court, another amended complaint that purported to amend only certain aspects of the First Amended Complaint. (Doc. 52.) The Court entered an Order striking that complaint from the record and directing Plaintiffs to file a comprehensive, stand-alone amended complaint "[t]o avoid any confusion about what claims are asserted against which [D]efendants." (Doc. 66, p. 4.) On February 13, 2024, Plaintiffs filed their

new Second Amended Complaint ("SAC"), which was 114 pages long and contained 588 enumerated paragraphs. (Doc. 67.) Defendants then filed a Motion for More Definite Statement and Partial Motion to Dismiss, (doc. 70), arguing that the SAC was a shotgun pleading and that several of Plaintiffs' claims were insufficiently pled, (doc. 70-1). The Court granted the motion in part, dismissing several of Plaintiffs' claims and concluding that the SAC amounted to a shotgun pleading. (Doc. 78.) The Court ordered Plaintiffs to file a Third Amended Complaint that clearly asserted the remaining claims and specified which allegations apply to which Defendant. (Id.)

On June 27, 2024, Plaintiffs filed the at-issue TAC, which names as Defendants the City and Leuschner, in her individual capacity, and alleges seven counts: "Violation of Ministerial Duties and Negligence Under Georgia Law Against Defendant Leuschner Arising From Failures Related to Video Camera Surveillance System And Leaving Mr. Harvey Alone In the Interview Room" (Count I); "Deliberate Indifference Under Section 1983 Against Defendant Leuschner" (Count II); "Violation of the ADA for Failure to Make Reasonable Modifications to Policies, Practices, and Procedures Against the City" (Count IV)[1]; "Violation of the ADA for Failure to Provide Reasonable Accommodations Against the City" (Count V); "Violation of the RA Against the City" (Count VI); "Punitive Damages Against Leuschner" (Count VII); and "Attorneys' Fees Against All Defendants" (Count VIII). (Doc. 79, pp. 15–44.)[2] Defendants then filed the motion presently before the Court, their Partial Motion to Dismiss Plaintiff's Third Amended Complaint.

---

[1] Although Plaintiffs include a Count III in their TAC, the TAC section dedicated to Count III only says "DISMISSED." (Doc. 79, p. 28.) Thus, though Plaintiff's alleged counts go up to Count VIII, there are only seven substantive counts in the TAC. (See generally id.)

[2] Plaintiffs do not allege any count against Officer Matthew White, nor do they name White as a Defendant in their TAC. (See generally doc. 79.) Plaintiffs clarify that this was intentional. (Doc. 83, pp. 25–26.) Defendants do not object to the removal of White as a party. (Doc. 80-1, p. 1 n.1.) The Court therefore **DISMISSES** Defendant White from the action and **DIRECTS** the Clerk of Court to **UPDATE** the docket accordingly.

(Doc. 80.) Defendants argue that Plaintiffs' TAC fails to state a claim for "deliberate indifference" against Leuschner and that Plaintiffs' ADA and RA claims against the City must be dismissed. (Doc. 80-1, pp. 6–12.) Plaintiffs filed a Response, (doc. 83), and Defendants filed a Reply, (doc. 85).

## STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must . . . state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotations omitted). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. When evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court must "accept[] the allegations in the complaint as true and constru[e] them in the light most favorable to the plaintiff." Belanger v. Salvation Army, 556 F.3d 1153, 1155 (11th Cir. 2009). But this tenet "is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft, 556 U.S. at 678. Rather, "[a] complaint must state a facially plausible claim for relief, and '[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Reese v. Ellis, Painter, Ratterree & Adams, LLP, 678 F.3d 1211, 1215 (11th Cir. 2012) (quoting Ashcroft, 556 U.S. at 678).

The plausibility standard is "not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Ashcroft, 556 U.S. at 678 (internal quotation marks and citation omitted). Dismissal under Rule 12(b)(6) is also permitted "when, on the basis of a

dispositive issue of law, no construction of the factual allegations will support the cause of action." Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist., 992 F.2d 1171, 1174 (11th Cir. 1993); see also Neitzke v. Williams, 490 U.S. 319, 326–27 (1989) (explaining that Rule 12 allows a court "to dismiss a claim on the basis of a dispositive issue of law").

**DISCUSSION**

**I.      Plaintiffs' Deliberate Indifference Claim Under Section 1983 Against Leuschner**

In Count II of the TAC, Plaintiffs assert that Leuschner is liable for compensatory damages under Section 1983 because she exhibited "deliberate indifference" to Harvey's Fourteenth Amendment rights by failing to act to prevent Harvey's suicide. (Doc. 79, pp. 17–28.) Defendants argue that Count II fails to state a claim for deliberate indifference because no allegations show Leuschner disregarded a "strong likelihood" Harvey would commit suicide. (Doc. 80-1, pp. 6–8.) In response, Plaintiffs primarily assert that Defendants' arguments for dismissal would subject Plaintiff to a greater burden of proof than what is appropriate at the pleading stage. (Doc. 83, pp. 5–11.) Having considered the parties' arguments, the Court agrees with Defendants and finds that Count II should be dismissed.

Section 1983 empowers certain litigants to recover monetary damages when state actors deprive them of Constitutional rights, stating,

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983. When individuals like Harvey are detained by state actors before trial, those individuals "have a Fourteenth Amendment due process right 'to receive medical treatment for illness and injuries, which encompasses . . . a right to be protected from self-inflicted injuries, including suicide.'" Cook ex rel. Est. of Tessier v. Sheriff of Monroe Cnty., 402 F.3d 1092, 1115

6

(11th Cir. 2005) (quoting Belcher v. City of Foley, 30 F.3d 1390, 1396 (11th Cir. 1994)).[3]  Jail officials are liable under Section 1983 for depriving detainees of this right when the officials display "deliberate indifference" to it.  Cook, 402 F.3d at 1115 (quoting Cagle v. Sutherland, 334 F.3d 980, 986 (11th Cir. 2003)).  To show deliberate indifference, "the plaintiff must prove that . . . the [official] actually knew that [her] conduct—[her] own acts or omissions—put the plaintiff at substantial risk of serious harm."  Wade v. McDade, No. 21-14275, 2024 WL 5200546, at *6 (11th Cir. Dec. 23, 2024) (quoting Wade v. McDade, 106 F.4th 1251, 1253 (11th Cir. 2024).)

In the detainee-suicide context, plaintiffs must show "that the defendant deliberately disregard[ed] 'a *strong likelihood* rather than a mere possibility that the self-infliction of harm w[ould] occur.'"  Cook, 402 F.3d at 1115 (quoting Cagle, 334 F.3d at 986).  Under this standard, "[t]he mere opportunity for suicide, without more, is clearly insufficient to impose liability on those charged with the care of prisoners."  Id. (quoting Cagle, 334 F.3d at 986).  Rather, the Eleventh Circuit has made it clear that, "no matter how [a] defendant['s] actions might be viewed, the law in this [C]ircuit makes clear that they cannot be liable under [Section] 1983 for the suicide of a prisoner who never had threatened or attempted suicide and who had never been considered a suicide risk."  Tittle v. Jefferson Cnty. Comm'n, 10 F.3d 1535, 1540 (11th Cir. 1994) (internal quotation omitted); see also Popham v. City of Talladega, 908 F.2d 1561, 1564 (11th Cir. 1990) ("Absent knowledge of a detainee's suicidal tendencies, . . . failure to prevent suicide has never been held to constitute deliberate indifference."  (citing Edwards v. Gilbert, 867 F.2d 1271, 1276–77 (11th Cir. 1989))).  Other courts in this Circuit have accordingly found that the requisite "'strong likelihood' of suicide does not exist . . . unless all of the following factors are present: (1) the

---

[3] Indeed, in this context, pretrial detainees are entitled to the same protections as prisoners, because states may not impose on pretrial detainees conditions that would violate a convicted prisoner's rights.  Hamm v. DeKalb Cnty., 774 F.2d 1567, 1573–74 (11th Cir. 1985).

inmate previously had threatened or attempted suicide; (2) that prior threat or attempt was known to the defendants; (3) the prior threat or attempt was somewhat recent; and, (4) the prior threat or attempt appeared genuine." Turner v. Phillips, 547 F. Supp. 3d 1188, 1200 (N.D. Fla. 2021), *aff'd*, No. 21-12370, 2022 WL 458238, at *1 (11th Cir. Feb. 15, 2022) (quoting Greffey v. State of Ala. Dep't of Corr., 996 F. Supp. 1368, 1382 (N.D. Ala. 1998)).

In the Court's prior Order, the Court denied Defendants' Motion to Dismiss this same "deliberate indifference" claim against this Defendant, relying exclusively on an allegation in the SAC that Harvey had stated to Leuschner, "I'm not a violent person but I'll stand on myself and kill myself." (Doc. 78, pp. 15–16 (citing doc. 67, p. 7).) The Court concluded that this statement was a clear threat of suicide, and, using the Turner factors, found that Leuschner's conduct "could amount to a reckless disregard of a strong likelihood of self-harm." (Id. at p. 15.) This allegation, however, is notably absent from the TAC. (See generally doc. 79.) Plaintiffs clarified that this omission was intentional, as a review of the video recording revealed that Harvey in fact did not make that statement. (Doc. 83, pp. 4–5.) "Without this alleged threat," Defendants argue, "Plaintiffs now fail to adequately plead a 'strong likelihood' that Harvey would commit suicide." (Doc. 80-1, p. 7.)

Plaintiffs argue in response that Defendants' argument—as well as the Court's prior Order—improperly requires Plaintiffs to meet, at the pleading stage, a burden of proof that should not apply until the summary judgment stage. (Doc. 83, pp. 5–11.) That is, Plaintiffs argue that Defendants and the Court are conflating liability requirements and pleading requirements. (See id. at p. 8 ("Liability and pleading requirements are disparate concepts.").) Plaintiffs support this assertion by pointing out, accurately, that nearly all the cases cited by Defendants and the Court are rulings at the summary judgment stage. See Cagle, 334 F.3d at 983; Wade, 2024 WL 5200546,

8

at *6; Gish, 516 F.3d at 953; Popham, 908 F.2d at 1562; Turner, 547 F. Supp. 3d at 1193; Tittle, 10 F.3d at 1537. Defendants reply that these summary judgment cases are offered "only for the purpose of establishing the elements of Plaintiffs' deliberate indifference claim that must be properly *alleged* to survive a motion to dismiss." (Doc. 85, p. 2.) Defendants are correct.

While evidentiary standards for liability are different than pleading standards, a plaintiff still must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft, 556 U.S. at 678 (2009) (quotation omitted). To assess a plaintiff's pleading, it is therefore necessary for courts to consider the law that will govern a defendant's ultimate liability.

In arguing to the contrary, Plaintiffs identify Jacobs v. Ford as the only detainee-suicide opinion cited throughout the briefing issued at the pleading stage. No. 21-13411, 2022 WL 1123384 (11th Cir. Apr. 15, 2022). But, despite Plaintiffs' attempts to distinguish Jacobs, that case only reinforces the Court's conclusion. Indeed, similar to here, the Eleventh Circuit in Jacobs held at the pleading stage that the plaintiff's allegations that the detainee "was visibly intoxicated and told [the defendants] that he was anxious, mentally ill, and off his medications," could not avoid dismissal because "[n]one of those factors would give a prison official knowledge of a strong likelihood that a detainee would try and end his own life." Id. at *4 (citing Popham, 908 F.2d at 1563–64). Moreover, in finding the plaintiff's pleadings inadequate, the Jacobs court relied on many of the same summary-judgment cases that the Court does here. Id. at *3–4 (citing Cook, 402 F.3d at 1092; Popham, 908 F.2d at 1561; Gish, 516 F.3d 952). The Jacobs opinion observed that these cases establish that, even at the pleading stage, "[a]bsent knowledge of a detainee's suicidal tendencies[,] . . . failure to prevent suicide has never been held to constitute deliberate indifference." Id. at *3 (quoting Popham, 908 F.2d at 1564). Without *allegations* that the official

9

knew of the detainee's suicidal tendencies, the pleading is insufficient.  See id.  The same is true here.

The Eleventh Circuit has made it clear that defendants "cannot be liable under [Section] 1983 for the suicide of a prisoner who never had threatened or attempted suicide and who had never been considered a suicide risk."  Tittle, 10 F.3d at 1540 (11th Cir. 1994) (internal quotation omitted).  Therefore, where there is no allegation that the detainee threatened suicide, attempted suicide, or was a suicide risk, dismissal is proper.  Here, the TAC does not allege facts showing that Harvey had suicidal tendencies, much less that Leuschner knew of them and deliberately disregarded them.  At most, the statements alleged in the TAC indicate a risk that Harvey would physically resist or become violent if officers tried to take him to jail.  Without factual allegations sufficient to infer a strong likelihood that Harvey would commit suicide while being held in the interview room—such as a suicide threat made known to Defendant Leuschner—Plaintiffs have failed to state a deliberate indifference claim against her that is plausible on its face.  The Court thus **GRANTS** Defendants' Motion to Dismiss as to Plaintiffs' deliberate indifference claim against Leuschner (Count II).  (Doc. 80.)

II.     **Plaintiffs' ADA and RA Claims Against the City**

Plaintiffs assert Counts IV, V, and VI of the TAC against Defendant City of Savannah, seeking to recover compensatory damages for the City's alleged violations of the ADA and RA. (Doc. 79, pp. 29–43.)  Counts IV and V allege, respectively, that Savannah violated Harvey's rights under Title II of the ADA by its "Failure to Make Reasonable Modifications to Policies Practices, and Procedures" and its "Failure to Provide Reasonable Accommodations."  (Id. at pp. 29–49.)  Count VI reincorporates the allegations of IV and V and asserts that, because Savannah is a recipient of federal funds, the conduct alleged in the ADA claims also entitles Plaintiffs to

10

recovery under Section 504 of the RA. (Id. at pp. 42–43.) Defendants argue the Court should dismiss all three of these counts because Plaintiffs have not alleged any facts supporting an inference that Savannah could be liable for violating the ADA or the RA. (Doc. 80-1, pp. 8–11.) The Court agrees.

Given the textual similarities between the ADA and the RA, the same standards govern both claims, and courts rely on cases construing the acts interchangeably. See Ingram v. Kubik, 30 F.4th 1241, 1256 (11th Cir. 2022). To state a claim under either statute, a plaintiff generally must prove:

> (1) that he is a qualified individual with a disability; (2) that he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) that the exclusion, denial of benefit, or discrimination was by reason of the plaintiff's disability.

Bircoll v. Miami-Dade Cnty., 480 F.3d 1072, 1083 (11th Cir. 2007); 42 U.S.C. § 12132. When a plaintiff seeks compensatory damages for alleged ADA or RA violations, as Plaintiffs do here, they must also prove that the defendant engaged in intentional discrimination. Ingram, 30 F.4th at 1257 (quoting Silberman v. Miami Dade Transit, 927 F.3d 1123, 1134 (11th Cir. 2019)). This, in turn, requires the plaintiff to establish "deliberate indifference" by showing that "an official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the entity's behalf," and who "had actual knowledge of discrimination in the entity's programs[,] . . . failed adequately to respond." Id. (citing Silberman, 927 F.3d at 1134).

Importantly, as Defendants point out, neither Title II of the ADA nor Section 504 of the RA allow for vicarious liability. See id. at 1256–59. Here, this means the City cannot be liable for the allegedly discriminatory conduct of the officers involved in Harvey's detention—Leuschner, White, Greene, and Valmont—because Plaintiffs have not alleged that those officers

were, themselves, high enough up the City's chain of command that they had authority to enact corrective measures on the City's behalf. Silberman, 927 F.3d at 1134. Plaintiffs, instead, must allege facts supporting an inference that some other authority-wielding City official failed to respond to known discrimination to avoid dismissal.

Both parties, addressing the scattered allegations in Plaintiffs' TAC, sort the alleged conduct giving rise to Plaintiff's ADA and RA claims into two categories: (1) failure by the City to train; and (2) failure by the City to provide reasonable accommodations. (See doc. 80-1, pp. 9–11; doc. 83, pp. 18–23.) The Court will take each in turn.

### A. The City's Failure to Train

Plaintiffs argue that they "have set forth a cognizable claim under the [ADA] for the [City]'s failure to train its officers to properly interview individuals with disabilities." (Doc. 83, pp. 18–21.) Defendants, on the other hand, argue that dismissal is proper because "Plaintiffs have not alleged sufficient *facts* to give rise to a plausible inference that the [City] knew of a need to train officers regarding how to respond to people with mental illness and deliberately chose not to do so." (Doc. 80-1, pp. 9–10.) Furthermore, Defendants assert, any allegations that the City did in fact know of such a need and deliberately disregarded it are merely conclusory. (Id.)

Plaintiffs cite the general principle that the ADA and the RA "impose[] affirmative obligations on public entities." (Doc. 83, pp. 19–20 (citing Ability Ctr. of Greater Toledo v. City of Sandusky, 385 F.3d 901, 910 (6th Cir. 2004).) To argue the City was deliberately indifferent, however, Plaintiffs only point generally to the bulk of the TAC's factual allegations detailing the conduct of Leuschner, White, Greene, and Valmont, while detaining Harvey. (Id. at p. 20 (citing doc. 79, pp. 6–11).) Absent from this are any factual allegations that "'an official . . . [had] authority to address the alleged discrimination and to institute corrective measures on the [City]'s

12

behalf' and 'had actual knowledge of discrimination in the [City]'s programs and failed adequately to respond.'" Ingram, 30 F.4th at 1257 (quoting Silberman, 927 F.3d at 1134); see also West v. DeKalb Cnty., No. 1:23-CV-01907-LMM, 2024 WL 1010672, *11 (N.D. Ga. Feb. 2, 2024), *appeal dismissed,* No. 24-10682, 2024 WL 2013847 (11th Cir. May 7, 2024) (to survive motion to dismiss, ADA plaintiff seeking compensatory damages must show "an official who . . . has authority to address the alleged discrimination and . . . had actual knowledge of discrimination in the entity's programs . . . failed adequately to respond.").

Plaintiffs do not argue or allege that Leuschner, or any of the other detaining officers, is such an official. Rather, they assert that the lack of adequate training Leuschner exhibited during Harvey's detainment resulted from "[City] policymakers, including . . . City Council, the Mayor, and the Chief of Police, [who] have long known that its City's Police Department did not provide its police officers adequate training and resources to recognize and accommodate persons experiencing mental health crises in the course of performing an arrest and/or interrogation." (Doc. 79, pp. 30, 39; see also doc. 83, p. 20.) According to Plaintiffs, the Court can *infer* from Leuschner's alleged conduct during Harvey's detention that "[City] officials, with the authority to prevent and/or remedy violations of federal law, had, at best, instituted a know nothing, do nothing policy." (Doc. 83, p. 20.) The Court rejects this argument. A ruling that merely assumes, based on Leuschner's conduct, that City officials must have knowingly allowed discriminatory policies, "would 'essentially eviscerate[] the requirement that there be a decision by an official,' thereby reducing the [official decision] standard to a variant of vicarious liability." Silberman, 927 F.3d at 1136 (quoting Liese v. Indian River Cnty. Hosp. Dist., 701 F.3d 334, 349 (11th Cir. 2012)).

Without the ability to rely on Leuschner's conduct, Plaintiffs' only remaining allegations of the City's deliberate indifference are entirely conclusory. (See, e.g., doc. 79, pp. 29–33 ("[City]

policymakers . . . have long known that its City's Police Department did not provide its police officers adequate training and resources to recognize and accommodate persons experiencing mental health crises;" "Defendant [City], through its policymakers, had actual knowledge of the need for such reasonable modifications to its policies, practices, and procedures, but deliberately ignored that unmet need;" "Defendant [City] was deliberately indifferent to that unmet need.").) Such conclusory allegations are not entitled to a presumption of truth. See Ashcroft, 556 U.S. at 681. The *factual* allegations to which Plaintiffs direct the Court do not mention any City official, with knowledge of the issue and the power to address the issue, who failed to respond. (See doc. 79, pp. 6–11.) Taken together,

> [Plaintiffs] ha[ve] not alleged sufficient facts to give rise to a plausible inference that [a City official] knew of a need to train . . . regarding how to respond to people with mental illnesses and deliberately chose not to do so . . . . Instead, [Plaintiffs] simply allege[] that [City officials] failed and refused to train . . . regarding handling mentally ill persons despite knowledge of a need for such training. Because such conclusory allegations are not entitled to a presumption of truth, [Plaintiffs] do[] not plausibly allege that the [City] acted with deliberate indifference in failing to train . . . .

Gardner v. Samaniego, No. 2:18-CV-01336-AKK, 2019 WL 2161144, at *3 (N.D. Ala. May 17, 2019) (quotations omitted) (internal citations omitted). Thus, the Court dismisses Plaintiffs' ADA and RA claims based on the alleged failure to train.

### B. The City's Failure to Provide Reasonable Accommodations

Plaintiffs argue that they "have set forth a cognizable claim under the [ADA] for [the City]'s failure to provide surveillance and or placement that accounted for the dangers presented by [Harvey]'s disability." (Doc. 83, pp. 21–23.) In particular, Plaintiffs allege that

> [t]o whatever extent [Harvey] was a person with suicidal impulses, he should have been provided accommodations to protect him from himself, and such accommodations could have been provided without constituting a substantial alteration in the services provided by [the City]'s Police Department. For example, [Harvey] could have been monitored by an investigator on the Police Department's

14

> video surveillance camera system or he could have had someone placed in the interview room with him, both of which were already required by policies of [the City]'s Police Department.

(Doc. 79, p. 35.)

Along with their general argument that Plaintiffs' allegations are merely conclusory and formulaic recitations of the elements, Defendants offer four specific reasons why Plaintiffs' claims on this issue should be dismissed: "(1) There is no allegation of a specific demand for accommodations made by Harvey;" "(2) There are no *factual* allegations that Harvey was treated differently from other detainees *because* he was disabled;" "(3) There are no factual allegations that a proper official of [the City] had actual knowledge of the alleged discrimination and deliberately failed to adequately respond."; and "(4) [The City] cannot be vicariously liable for its employees' alleged violations of the ADA." (Doc. 80-1, pp. 10–11.)

Beginning with their first argument, Defendants contend that there was no duty to provide a reasonable accommodation unless Harvey specifically requested one. (Id. (citing Rylee v. Chapman, 316 F. App'x 901, 906 (11th Cir. 2009) ("[T]he defendant's duty to provide a reasonable accommodation is not triggered until the plaintiff makes a 'specific demand' for an accommodation.")).) Plaintiffs do not dispute that Harvey never requested an accommodation but argue that requests for accommodation are not required when a plaintiff's need for one was obvious. (Doc. 83, p. 22.) While this is a correct statement of law,[4] even accepting all of Plaintiff's

---

[4] See Smith v. Dunn, No. 2:19-CV-927-ECM, 2021 WL 471187, at *8 (M.D. Ala. Feb. 9, 2021) (internal citations omitted) ("[A]n explicit request for a reasonable accommodation may sometimes be unnecessary where the need for an accommodation is obvious."); Arenas v. Ga. Dep't of Corr., No. CV416-320, 2020 WL 1849362, at *12 (S.D. Ga. Apr. 13, 2020) (accommodation request unnecessary where disability and need for accommodations are "open, obvious, and apparent"); Nattiel v. Fla. Dep't of Corrs., No. 1:15-cv-00150, 2017 WL 5774143, at *1 (N.D. Fla. Nov. 28, 2017) (accommodation request unnecessary if "the defendant otherwise had knowledge of an individual's disability and needs but took no action").

15

allegations as true, the need for an accommodation here was not obvious enough to not require a request.

For the reasons previously discussed, Plaintiffs have failed to allege that the officers knew of a strong likelihood that Harvey would commit suicide. See Discussion Section I, supra. It would be inconsistent to conclude, on the one hand, that Leuschner was not deliberately indifferent for failing to prevent Harvey's suicide, while also finding, on the other hand, that Harvey so obviously had a life-threatening disability that requesting an accommodation was unnecessary. Other courts have found that the disabilities underlying suicide risk were not open and obvious on facts more compelling those alleged here including where the detainee struggled with mental health or even disclosed a previous suicide attempt. See Gonzales v. Bexar Cnty., No. SA-13-CA-539, 2014 WL 12513177, at *5 (W.D. Tex. Mar. 20, 2014), *aff'd sub nom.*, 584 F. App'x 232 (5th Cir. 2014) (officials' awareness of inmate's mental health struggles did not make the "need for additional suicide prevention treatment . . . open, obvious, and apparent"); Zaragoza v. Dallas Cnty., No 3:07–CV–1704, 2009 WL 2030436, at *11 (N.D. Tex. July 13, 2009) (although the jail knew about the inmate's depression, received a call from his sister about the inmate's suicidal thoughts, and provided the inmate with antidepressant medication and counseling, the court found that "it does not appear that . . . the need for reasonable accommodations suggested here by [the] [p]laintiff [was] open, obvious, and apparent"); Arenas v. Ga. Dep't of Corr., No. CV416-320, 2020 WL 1849362, at *13 (S.D. Ga. Apr. 13, 2020) (need for suicide-prevention accommodation not open and obvious even where officials knew of inmate's previous suicide attempt before incarceration). Given that prison officials do not know of a detainee's suicidal tendencies even when that detainee is intoxicated, emotional, depressed, and angry, it follows that such behavior likewise does not render the need for suicide-prevention accommodations open and obvious. See

16

Popham, 908 F.2d at 1563 (no knowledge of suicide risk even when detainee was "intoxicated . . . emotional, depressed, and angry"). Because, as alleged, Harvey did not request an accommodation, and the need for an accommodation was not open and obvious, Plaintiffs' ADA and RA claims must be dismissed to the extent they are based on the City's failure to provide an accommodation.[5]

Because Plaintiffs have failed to adequately plead actionable ADA and RA claims on these two theories, and these are Plaintiffs' only theories to support those claims, the Court **GRANTS** Defendants' Motion to Dismiss as to Plaintiffs' ADA and RA claims (Counts IV, V & VI). (Doc. 80.)

### III.  Plaintiffs' Remaining Claims

In addition to their federal claims, Plaintiffs alleged a state law negligence claim against Leuschner (Count I), as well as derivative claims for punitive damages (Count VII) and attorneys' fees (Count VIII). (Doc. 79, pp. 15–16, 43–44.) Although Defendants did not move to dismiss Plaintiffs' remaining claims, because the federal claims have been dismissed the Court has "an obligation to examine *sua sponte* [its] own jurisdiction over a case, notwithstanding the contentions of the parties." DeRoy v. Carnival Corp., 963 F.3d 1302, 1311 (11th Cir. 2020).

 "The decision to exercise supplemental jurisdiction over pendant state claims rests within the discretion of the district court." Raney v. Allstate Ins. Co., 370 F.3d 1086, 1088–89 (11th Cir. 2004); see also Mergens v. Dreyfoos, 166 F.3d 1114, 1119 (11th Cir. 1999) ("28 U.S.C. § 1367(c) provides that a district court may decline to exercise supplemental jurisdiction if 'the district court has dismissed all claims over which it has original jurisdiction.'"). Further, "if the federal claims are dismissed prior to trial, [the Supreme Court of the United States] strongly encourages or even

---

[5] The Court need not address Defendants' other arguments for dismissing these claims.

requires dismissal of state claims." Mergens, 166 F.3d at 1119 (citing United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966)). "Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. Certainly, if the federal claims are dismissed before trial, . . . the state claims should be dismissed as well." Gibbs, 383 U.S. at 726. Accordingly, because the federal claims have been dismissed and the Court is now divested of federal jurisdiction, the Court declines in its discretion to exercise supplemental jurisdiction over the remaining state law negligence claim and the derivative punitive damages and attorneys' fees claim against Leuschner. Counts I, VII, and VIII of Plaintiffs' TAC are **DISMISSED without prejudice**. (Doc. 79.)

## CONCLUSION

The Court is sympathetic to Harvey's family and to the pain his death has caused them. But those sentiments cannot compel the Court to disregard the law applicable to Plaintiffs' claims or the pleading standards implicated by Defendants' Motion. Despite ample opportunities to plead and replead their claims, Plaintiffs have not stated a plausible federal claim against Defendants. For the reasons above, the Court **GRANTS** Defendants' Partial Motion to Dismiss Plaintiffs' Third Amended Complaint. (Doc. 80.) Because Plaintiffs have not plausibly alleged that Defendant Leuschner was deliberately indifferent to a strong likelihood that Harvey would commit suicide, the Court **DISMISSES** Count II. Plaintiffs additionally have not alleged sufficient facts to give rise to a plausible inference that a City official knew of a need to train SPD officers on how to respond to people with mental illnesses and deliberately chose not to do so, nor did Plaintiffs allege sufficient facts to show that Harvey requested an accommodation or that the need for one was otherwise open and obvious. Without any such allegations to support Plaintiffs' ADA and RA claims, the Court **DISMISSES** Counts IV, V, and VI. No federal claims remain before this

Court, making it an inappropriate forum for Plaintiffs' remaining state-law claims.  Accordingly, Plaintiffs' remaining claims (Counts I & VII–VIII) are **DISMISSED without prejudice**.  Because no claims remain before the Court, the Court **DIRECTS** the Clerk of Court to **ENTER** the appropriate judgment of dismissal and to **CLOSE** this case.

**SO ORDERED**, this 6th day of March, 2025.

_____
R. STAN BAKER, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA